Ryan C. Kingston (U.S.B. No. 14000)
ryankingston32@gmail.com
3212 S. State Street
Salt Lake City, Utah 84115
Telephone: (801) 915-9035
*Attorney for Hyrum Kingston*

<table>
<tr><td colspan="2" align="center"><strong>IN THE UNITED STATES DISTRICT COURT<br>DISTRICT OF UTAH, CENTRAL DIVISION</strong></td></tr>
<tr><td>AMANDA RAE GRANT, et al.,<br>Plaintiffs,<br><br>vs.<br><br>HYRUM DALTON KINGSTON, et al.,<br>Defendants.</td><td><strong>DEFENDANT HYRUM DALTON KINGSTON'S MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6) FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED</strong><br><br><strong>Case No. 2:24-cv-00155-AMMA-JCB</strong><br><br>Judge: Hon. Ann Marie McIff Allen<br>Magistrate Judge: Hon. Jared C. Bennett</td></tr>
</table>

Defendant Hyrum Dalton Kingston, by and through undersigned counsel, respectfully moves this Court pursuant to Federal Rule of Civil Procedure 12(b)(6) for an order dismissing with prejudice all claims asserted against him in Plaintiffs' Third Amended Complaint (ECF No. 412, the "TAC"). In support of this Motion, Defendant states as follows:

## TABLE OF CONTENTS

**INTRODUCTION**...................................................................................................................... 2

**STATEMENT OF FACTS**........................................................................................................ 4

    I. Hyrum Dalton Kingston's Alleged Role................................................................................ 4

    II. Allegations Concerning Plaintiff Amanda Rae Grant........................................................... 5

    III. Allegations Concerning Plaintiff Jenny Kingston................................................................ 6

IV. Allegations Concerning Plaintiff Priscilla Tucker.................................................................7

V. Scope of Allegations Against Hyrum Dalton Kingston.........................................................7

**LEGAL STANDARD**...............................................................................................................**8**

**ARGUMENT**...........................................................................................................................**8**

I. THE TAC FAILS TO STATE ANY PLAUSIBLE CLAIM AGAINST HYRUM DALTON KINGSTON......................................................................................................................... 8

    A. The TAC's Specific Allegations Against Hyrum Dalton Kingston Are Extraordinarily Limited.......9

    B. Plaintiff-by-Plaintiff Analysis Reveals Fatal Deficiencies............................................ 11

    C. The TAC's Reliance on Collective Allegations Violates This Court's Prior Order...........................12

    D. Plaintiffs Assert Claims Against Hyrum Without Alleging Any Individualized Conduct as to the Remaining Plaintiffs........................................................................................................ 13

II. COUNTS I AND II FAIL TO STATE A PLAUSIBLE CLAIM UNDER 18 U.S.C. §§ 1589, 1590, AND 1595.......................................................................................................................14

    A. No Plausible Allegation of Knowing Coercion or Prohibited Means.................................. 14

    B. No Plausible Venture Liability or Knowing Benefit Under § 1595....................................... 16

    C. Absence of Causal Nexus Between Hyrum's Alleged Conduct and the Plaintiffs' Labor................19

    D. Involuntary Servitude Claim Under § 1584 and the Thirteenth Amendment Also Fails.................19

III. THE FLSA CLAIMS (COUNT III) FAIL BECAUSE HYRUM DALTON KINGSTON IS NOT AN "EMPLOYER" UNDER THE ECONOMIC REALITY TEST AND ARE INDEPENDENTLY TIME-BARRED............................................................................................................................20

    A. Hyrum Dalton Kingston Is Not an "Employer" Under the FLSA Economic Reality Test.............20

    B. FLSA Claims Are Independently Time-Barred.......................................................... 22

IV. ANY CIVIL CONSPIRACY CLAIM (COUNT V) FAILS FOR LACK OF SPECIFIC AGREEMENT, MEETING OF THE MINDS, OR OVERT ACT TIED TO THESE PARTICULAR PLAINTIFFS' ALLEGED INJURIES..........................................................................................23

V. THE TAC'S CONTINUED RELIANCE ON COLLECTIVE ALLEGATIONS VIOLATES THIS COURT'S MARCH 31, 2026 ORDER AND IQBAL/TWOMBLY — ALLOWING THESE CLAIMS WOULD EVISCERATE THE PLAUSIBILITY STANDARD AND ENCOURAGE VICARIOUS LIABILITY BY TITLE ALONE............................................................................................24

VI. FURTHER AMENDMENT WOULD BE FUTILE — THESE ARE THE FACTS AFTER FULL OPPORTUNITY TO AMEND, AND THEY ARE LEGALLY INSUFFICIENT AS A MATTER OF LAW................................................................................................................................26

**CONCLUSION**.....................................................................................................................**26**

## INTRODUCTION

Plaintiffs, ten former members of a Utah-based group they call "the Order," assert sweeping

claims of labor trafficking, involuntary servitude, willful FLSA violations, and related state-law claims

arising from alleged childhood labor at Order-affiliated businesses, including Ensign Learning Center.

Defendant Hyrum Dalton Kingston is named as a defendant primarily because he is alleged to be one of the "Seven Kingston Brothers," a leader in the Order, and principal/supervisor at Ensign Learning Center where three Plaintiffs (Amanda Rae Grant, Jenny Kingston, and Priscilla Tucker) briefly worked as minors.

The TAC's allegations against Hyrum Dalton Kingston are extraordinarily thin—limited to his supervisory title, one alleged incident of physical discipline for a dress-code violation (Amanda only), and statements he made during a DCFS interview concerning sexual abuse by a third party (John Paul Johnson). These facts do not plausibly establish that Hyrum knowingly obtained or compelled any Plaintiff's labor through force, threats, coercion, or abuse of legal process, or that he knowingly benefited from participation in a "venture" he knew or should have known was engaged in trafficking violations. *See* 18 U.S.C. §§ 1589, 1590, 1595.

This Court previously cautioned that "collective allegations will not be tolerated" and that claims must be supported by well-pleaded facts against particular defendants. Order, ECF No. 411 at 8–9. The TAC fails to cure this deficiency as to Hyrum Dalton Kingston.

This Motion does not ask the Court to determine whether Plaintiffs have alleged wrongful conduct by the Order generally. The question presented is narrower: whether the TAC plausibly alleges facts showing that Hyrum Dalton Kingston himself committed the statutory violations asserted against him. The TAC repeatedly attributes conduct to "the Order," "Order leadership," or "Defendants" collectively, but federal pleading standards require individualized allegations

connecting each defendant to each claim. Without such allegations, Plaintiffs have not provided fair notice of the basis for liability against Defendant Kingston or stated a plausible claim for relief.

Accordingly, the dispositive issue presented by this Motion is straightforward. Even assuming every factual allegation in the TAC is true, have Plaintiffs alleged facts that plausibly establish Hyrum Dalton Kingston's personal liability under the TVPRA, the FLSA, or any conspiracy theory? The answer is no. The TAC alleges organizational misconduct in great detail, but it does not allege the individualized facts required to impose liability on this Defendant. As such, all claims against him should be dismissed with prejudice.

## STATEMENT OF FACTS

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Hyrum Dalton Kingston accepts as true, solely for purposes of this Motion, the well-pleaded factual allegations in the Third Amended Complaint ("TAC").

### I. Hyrum Dalton Kingston's Alleged Role

The TAC alleges that Hyrum Dalton Kingston is one of the "Seven Kingston Brothers" and a leader of the Order who resides in Salt Lake County, Utah, and reports to Paul Elden Kingston, Sr. under the "Law of One Above Another." (TAC ¶ 20.) He is alleged to have served as principal of Ensign Learning Center, an Order-operated school. (TAC p. 21; see also TAC ¶ 174.) Non-party Karen Bryant, one of his wives, allegedly was a supervisor at Ensign and reported to him. (TAC ¶ 174.)

The TAC contains extensive allegations describing Order children working at young ages in Order businesses, including Ensign, completing online schooling, and having earnings directed to Order Bank accounts. (TAC ¶¶ 170–180 and general allegations throughout.) These allegations are

pleaded collectively against "the Order," "Order leadership," or "Defendants" as a group. The TAC does not allege that Hyrum Dalton Kingston personally created, implemented, or enforced the Order's general labor or compensation practices. It does not allege that he personally directed Amanda Rae Grant, Jenny Kingston, or Priscilla Tucker to work at Ensign, set their hours or work assignments, determined their compensation, maintained their employment records, or threatened them with serious harm if they refused to work there.

The only specific, individualized factual allegations concerning Hyrum Dalton Kingston's personal conduct relate to his role at Ensign and involve two incidents concerning Plaintiff Amanda Rae Grant.

## II. Allegations Concerning Plaintiff Amanda Rae Grant

Amanda Rae Grant (born August 31, 1995) alleges she worked at multiple Order businesses, including full-time as a teacher's assistant at Ensign Learning Center beginning around age 15. (TAC ¶¶ 171–176.) While there, she was supervised by adults including non-party Karen Bryant, who reported to Hyrum Dalton Kingston as principal. (TAC ¶ 174.)

The TAC alleges two specific incidents involving Hyrum and Amanda:

First, Amanda alleges she previously suffered physical discipline by Hyrum Dalton Kingston for an alleged violation of the work dress code at Ensign. (TAC ¶ 163.) She alleges she understood there would be negative consequences if she disobeyed his instructions. (*Id*.) The TAC does not allege that this discipline was administered to compel Amanda to work, to continue working at Ensign, or to accept any particular work assignment. It does not allege that Hyrum threatened Amanda with similar or greater consequences if she refused to work at Ensign or if she left.

5

Second, after Amanda disclosed childhood sexual abuse by Defendant John Paul Johnson (a third party) to individuals outside the Order, DCFS personnel came to Ensign to interview her. (TAC ¶ 163; see also TAC ¶ 131.) According to the TAC, Hyrum Dalton Kingston rushed to Amanda and explained that she had a legal right to have a witness present. He instructed her to "honor her father and her mother" and "protect her family." (TAC ¶ 163.) Amanda alleges she did not want an Order witness present. (TAC ¶ 164.) Non-party Mary Sommers initially joined the interview but left a tape recorder in the room upon exiting. (TAC ¶ 165.)

Amanda alleges that, as a direct result of Hyrum's statements and the presence of the tape recorder, she did not disclose the abuse during the interview out of fear of retaliation or punishment from Hyrum, her parents, and the Order. (TAC ¶ 166.) She focused on semantics to avoid lying and continued protecting her abuser in a follow-up interview. (TAC ¶¶ 167–168.) The TAC alleges that Hyrum "not only supervised Amanda as a school employee, but also physically disciplined her and later directed her not to harm the Order when DCFS came to investigate." (TAC ¶ 174.)

The TAC does not allege that Hyrum ever told Amanda she had to work at Ensign, that she could not leave, that she would suffer serious harm if she refused to work there, or that he personally controlled or diverted her earnings from her work at Ensign. Amanda asserts only labor trafficking (Count I) and involuntary servitude (Count II) claims against Hyrum. She does not assert an FLSA claim against him.

### III. Allegations Concerning Plaintiff Jenny Kingston

Jenny Kingston (born May 10, 1997) alleges she worked at Ensign Learning Center when she started high school and reported to Hyrum Dalton Kingston and Karen Bryant. (TAC ¶ 206.)

The TAC alleges no other specific interaction, conversation, threat, discipline, statement, work assignment, pay discussion, or coercive act by Hyrum directed at Jenny. Jenny asserts labor trafficking (Count I), involuntary servitude (Count II), and FLSA claims (Count III) against Hyrum based solely on the allegation that she reported to him during her time as a teacher's assistant at Ensign.

### IV. Allegations Concerning Plaintiff Priscilla Tucker

Priscilla Tucker (born April 18, 1997) alleges she began working at Ensign Learning Center at age 13 or 14 under the supervision of Karen Bryant and Defendants Hyrum Dalton Kingston, Patricia Kingston, and Paul Elden Kingston, Sr. (TAC ¶ 402.)

She worked full-time monitoring classes, helping children, grading papers, and teaching, while also completing Penn Foster online high school, for which she paid herself. (TAC ¶¶ 403–405.) The TAC alleges no other specific conduct, statement, threat, discipline, or action by Hyrum directed at Priscilla. Priscilla asserts labor trafficking and involuntary servitude claims against Hyrum based solely on the group supervision allegation.

### V. Scope of Allegations Against Hyrum Dalton Kingston

The TAC's individualized allegations against Hyrum Dalton Kingston are limited to his position as principal of Ensign Learning Center and the two incidents involving Amanda Rae Grant described above. For Jenny Kingston and Priscilla Tucker, the TAC alleges only that they reported to or worked under Hyrum's supervision for short periods at Ensign. The TAC does not allege any other personal conduct by Hyrum toward any of the three Plaintiffs that relates to their work, compensation, or decision to work at Ensign.

**LEGAL STANDARD**

To survive a Rule 12(b)(6) motion, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Threadbare recitals of elements, supported by mere conclusory statements or "collective allegations" against "Defendants" or "the Order," are insufficient. *Iqbal*, 556 U.S. at 678; see also ECF No. 411 at 8–9 (rejecting undifferentiated group pleading and requiring claims to be tied to specific paragraphs identifying particular defendants' conduct).

This Court applies the same standard here: it must assume well-pleaded allegations are true and draw reasonable inferences in Plaintiffs' favor, but it need not accept legal conclusions or implausible inferences. *Leverington v. City of Colo. Springs*, 643 F.3d 719, 723 (10th Cir. 2011); ECF No. 411 at 3.

**ARGUMENT**

**I. THE TAC FAILS TO STATE ANY PLAUSIBLE CLAIM AGAINST HYRUM DALTON KINGSTON**

Hyrum Dalton Kingston is alleged to be a leader of the Order, one of the Seven Kingston Brothers, principal of Ensign Learning Center, and supervisor to certain minor Plaintiffs there. TAC ¶ 20. However, the specific factual allegations concerning his personal conduct toward the Plaintiffs who name him are extraordinarily limited — far too limited to satisfy *Iqbal*, *Twombly*, or this Court's March 31, 2026 Order.

**A. The TAC's Specific Allegations Against Hyrum Dalton Kingston Are Extraordinarily Limited**

The TAC's most detailed allegations against Hyrum concern Amanda Rae Grant. Even these, however, fail to state a plausible claim. Amanda worked full-time as a teacher's assistant at Ensign beginning around age 15. TAC ¶ 174. She was supervised by adults including non-party Karen Bryant (Hyrum's wife), who reported to Hyrum as principal. *Id.* Hyrum "reported to Defendant Paul Elden Kingston Sr. under the Law of One Above Another." *Id.* These allegations describe organizational hierarchy, but they do not allege conduct satisfying any element of the claims asserted against Hyrum. It says nothing about Hyrum personally using prohibited means to obtain Amanda's labor, threatening her with serious harm for refusing work, controlling her pay, or knowingly benefiting from a trafficking venture specific to her.

Amanda alleges she "previously suffered physical abuse by Hyrum Dalton Kingston for alleged violations of the work dress code at the school" and understood there would be negative consequences if she disobeyed his instructions. TAC ¶ 163. The TAC provides no detail about when this occurred, what exactly happened, whether it was a single event or repeated, or — most importantly — any link between this incident and Amanda's decision to work at Ensign or to continue working there. A school principal enforcing a dress code for students or staff (even if the enforcement involved physical discipline, which is itself a serious allegation) is not the same as using force or threats to obtain labor. There is no allegation that Hyrum ever said, implied, or acted in a way that linked dress-code compliance (or any other behavior) to Amanda's obligation to work at Ensign or to suffer serious harm if she refused to work.

The DCFS interview episode is the most detailed allegation in the entire TAC against Hyrum. (TAC ¶¶ 131, 163–168, 174). Although the allegations concerning the DCFS interview may describe troubling conduct, the TAC does not plausibly allege that this conduct was used to obtain, maintain, or compel Plaintiffs' labor within the meaning of 18 U.S.C. § 1589. The TAC does not allege that Hyrum conditioned continued work, employment status, compensation, or other labor-related consequences on Amanda's cooperation with any investigation. The episode concerned DCFS investigating sexual abuse by third party John Paul Johnson. Hyrum allegedly rushed to Amanda, told her she had a right to a witness, instructed her to "honor her father and her mother" and "protect her family," and another Order member left a tape recorder. Amanda alleges this caused her not to disclose the abuse out of fear of retaliation from Hyrum (based on the prior dress-code incident), her parents, and the Order. She focused on semantics and continued protecting her abuser in a follow-up interview.

Even accepting every word as true, this episode does not plausibly allege that Hyrum used any prohibited means under § 1589 to obtain or compel Amanda's labor at Ensign. The statements were about protecting the family and the Order from a DCFS investigation into sexual abuse by someone else. They were not about work assignments, pay, hours, or consequences for refusing to work at Ensign. The "fear of retaliation" Amanda allegedly felt was based on a prior dress-code incident and general Order culture — not on any threat by Hyrum that non-performance of labor would result in serious harm. The TAC itself frames the episode as an effort to prevent disclosure of "the abuse and rapes she had been suffering for years" at the hands of John Paul Johnson (TAC ¶ 131), not as an effort to extract labor.

Amanda allegedly never received a paycheck from Ensign (or other Order businesses), and her earnings were allegedly siphoned to Order Bank accounts. But the TAC attributes this systemic practice to the Order's broader leadership and culture — not to any specific action by Hyrum Dalton Kingston at Ensign. There is no allegation that Hyrum personally controlled Amanda's Order Bank account, directed the diversion of her earnings, or took any action to prevent her from being paid for her work at Ensign.

**B. Plaintiff-by-Plaintiff Analysis Reveals Fatal Deficiencies**

With respect to Plaintiff Jenny Kingston, the TAC alleges only that when Jenny reached high school, she was assigned as a Teacher's Assistant at Ensign Learning Center, "where she reported to Karen Bryant and Defendant Hyrum Dalton Kingston." (TAC ¶ 206.) There is no other specific allegation against Hyrum concerning Jenny anywhere in the 138-page TAC. The TAC alleges no conversation, discipline, threat, work-assignment directive, pay discussion, coercive statement, or other interaction by Hyrum beyond the allegation that Jenny reported to him as principal. Nor does the TAC allege that Hyrum personally threatened, coerced, recruited, obtained, or compelled Jenny's labor through any prohibited means.

Jenny asserts labor trafficking, involuntary servitude, and FLSA claims against Hyrum based solely on this one sentence. This is the definition of insufficient, collective/group pleading. It alleges a title and a reporting line — nothing more. Under *Iqbal* and this Court's prior order, this is legally insufficient to state any claim.

With respect to Plaintiff Priscilla Tucker, the TAC alleges that at approximately age 13 or 14, Priscilla was assigned as a Teacher's Assistant at Ensign Learning Center "under the supervision of Karen Bryant and Defendants Hyrum Dalton Kingston, Patricia Kingston, and Paul Elden

Kingston, Sr." (TAC ¶ 402.) She worked full-time (8 a.m. to 4 p.m.), monitoring classes, helping children, grading papers, and teaching, while also doing Penn Foster online high school (which she paid for herself; the school allegedly claimed her tuition as compensation). (TAC ¶¶ 403–405.) Some co-workers allegedly received Statement credits; Priscilla allegedly received nothing.

There is no other specific allegation against Hyrum concerning Priscilla. No discipline, no threat, no conversation about work or pay, no allegation that Hyrum personally directed her work, evaluated her, or took any action toward her beyond the group supervision allegation that includes three other named individuals and one non-party.

Priscilla asserts labor trafficking and involuntary servitude claims against Hyrum based on this group allegation. This, too, is classic collective pleading that this Court has rejected.

**C. The TAC's Reliance on Collective Allegations Violates This Court's Prior Order**

Beyond the limited individual allegations, the TAC relies on hundreds of paragraphs of collective allegations against "the Order," "Order leadership," or "Defendants" describing general child-labor practices, the "Law of One Above Another," punishments, earnings diversion, and hierarchy—none of which are tied to specific conduct by Hyrum Dalton Kingston toward Amanda, Jenny, or Priscilla. This Court has already held that such collective allegations are insufficient. ECF No. 411 at 8–9. The TAC has not cured this deficiency; it has merely added a thin layer of individual allegations that, even if true, fail to satisfy the statutory elements. If these facts were sufficient, virtually any supervisor in a hierarchical organization could be sued for forced labor or trafficking based solely on title, one isolated and unrelated disciplinary incident, and a generalized allegation of fear—precisely the type of pleading Rule 8, *Iqbal*, *Twombly*, and this Court's March 31, 2026 Order

12

forbid. The TAC provides neither the defendant-specific facts nor the plausible allegations of each element that governing standards require as to Hyrum Dalton Kingston.

### D. Plaintiffs Assert Claims Against Hyrum Without Alleging Any Individualized Conduct as to the Remaining Plaintiffs

The TAC names Hyrum Dalton Kingston as a defendant in claims asserted by additional Plaintiffs even though those Plaintiffs allege no individualized conduct by Hyrum whatsoever. Instead, the TAC relies on generalized allegations concerning "the Order," "Order leadership," or the "Seven Kingston Brothers" and incorporates those allegations by reference into subsequent causes of action.

Rule 8 does not permit a plaintiff to state a claim against an individual defendant merely by naming him in the caption of a cause of action or by alleging that he held a leadership position within an organization. Each Plaintiff must allege facts showing that Hyrum Dalton Kingston's own conduct satisfies the elements of the claims asserted by that Plaintiff. Where a Plaintiff alleges no defendant-specific facts concerning Hyrum, the claim necessarily fails under *Iqbal*, *Twombly*, and this Court's March 31, 2026 Order.

To the extent any Plaintiff other than Amanda Rae Grant, Jenny Kingston, or Priscilla Tucker purports to assert claims against Hyrum Dalton Kingston, those claims should likewise be dismissed because the TAC alleges no individualized facts connecting Hyrum to that Plaintiff's alleged injuries.

The following sections demonstrate in detail why these sparse allegations fail to state plausible claims under the TVPRA, FLSA, and conspiracy theories.

13

## II. COUNTS I AND II FAIL TO STATE A PLAUSIBLE CLAIM UNDER 18 U.S.C. §§ 1589, 1590, AND 1595

Congress enacted the Trafficking Victims Protection Act of 2000 (TVPA), Pub. L. No. 106-386, and its reauthorizations to combat severe forms of trafficking in persons, including forced labor and sex trafficking. The civil remedy provision, 18 U.S.C. § 1595, was expanded in 2008 to allow victims to sue not only perpetrators but also those who knowingly benefit from participation in a venture they knew or should have known was engaged in a violation of the chapter.

Section 1589(a) provides that whoever knowingly obtains the labor or services of a person by any of the following means shall be punished: By means of force, threats of force, physical restraint, or threats of physical restraint; By means of serious harm or threats of serious harm; By means of the abuse or threatened abuse of law or legal process; or By means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint.

Section 1590 prohibits trafficking into such conditions. Section 1595 creates a civil cause of action against the perpetrator or "whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter."

### A. No Plausible Allegation of Knowing Coercion or Prohibited Means

The TAC must plausibly allege each of these elements as to Hyrum Dalton Kingston specifically. It does not. The TAC does not allege that Hyrum Dalton Kingston ever: Used force, threats of force, or physical restraint to obtain Amanda's, Jenny's, or Priscilla's labor at Ensign; Threatened serious harm if they refused to work at Ensign or continued to work there; Abused or

14

threatened to abuse law or legal process to compel their labor (the DCFS episode was about concealing third-party sexual abuse, not labor conditions); Created or implemented any scheme, plan, or pattern specifically intended to cause these Plaintiffs to believe that refusing to work at Ensign would result in serious harm to themselves or others; or Personally directed these Plaintiffs to work at Ensign without pay, controlled their compensation, or took any action to prevent them from being paid for their work at Ensign.

The single physical discipline incident involving Amanda (dress-code violation) was an alleged enforcement of a school rule. It was not linked in the TAC to any work assignment, refusal to work, or consequence for non-performance of labor. There is no allegation that Hyrum ever told Amanda (or anyone) that dress-code violations or any other behavior would result in being forced to work at Ensign or suffering serious harm for refusing to work there. Under 18 U.S.C. § 1589(c)(2), "serious harm" means "any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm." The TAC pleads no facts showing that the dress-code incident (or any statement by Hyrum) meets this standard in connection with these Plaintiffs' labor at Ensign.

The DCFS interview episode — the most detailed allegation against Hyrum — concerned an investigation into sexual abuse by third party John Paul Johnson. The TAC itself describes it as an effort to prevent Amanda from disclosing "the abuse and rapes she had been suffering for years." (TAC ¶ 131.) The statements Hyrum allegedly made ("honor your father and mother," "protect your family") and the tape recorder left by another Order member were directed at concealing that sexual

15

abuse from DCFS. They were not directed at compelling Amanda to work at Ensign, to continue working there, or to accept any particular labor condition.

The TAC does not allege that Hyrum conditioned Amanda's employment, continued work, compensation, school status, housing, family relationships, or any other labor-related benefit upon her participation in the alleged conduct. The absence of any allegation connecting the DCFS interview to the decision to work at Ensign, continue working at Ensign, or provide labor defeats the required nexus between the alleged coercion and the alleged forced labor.

Even if Amanda subjectively feared retaliation from Hyrum, the TAC still fails to allege that Hyrum knowingly used that fear as a means of obtaining Amanda's labor. Section 1589 requires that the prohibited means be used to cause the person to perform labor or services. A generalized fear of authority, without a factual allegation that the fear was employed to compel labor, is insufficient to state a claim.

For Jenny Kingston and Priscilla Tucker, the TAC alleges nothing beyond the fact that they "reported to" or worked "under the supervision of" Hyrum (and others) at Ensign for short periods as teacher's assistants. There is no allegation of any coercive statement, threat, discipline, or action by Hyrum directed at either of them. There is no allegation that Hyrum even interacted with them individually. These allegations are legally insufficient under any reading of § 1589.

**B. No Plausible Venture Liability or Knowing Benefit Under § 1595**

Even assuming arguendo that Ensign Learning Center or the broader Order operations constituted a "venture" for purposes of § 1595, the TAC fails to allege facts showing that Hyrum Dalton Kingston: Knowingly benefited from participation in that venture; and Knew or should have

known that the venture was engaged in an act in violation of §§ 1589 or 1590 with respect to these Plaintiffs.

"Venture" under § 1595 has been interpreted broadly to include an "association in fact" enterprise, not necessarily a formal business entity. *See Ricchio v. McLean*, 839 F.3d 37, 40 (1st Cir. 2016) (motel owners associated in fact with sex trafficker by renting rooms where forced sexual labor occurred); *see also Doe I v. Red Roof Inns, Inc.*, 21 F.4th 714, 726–27 (11th Cir. 2021) (discussing "common enterprise" vs. "associated in fact" standards). But even under the broadest interpretation, the TAC must allege facts showing Hyrum's knowing participation in or benefit from a venture that he knew or should have known was violating the trafficking statutes as to these specific Plaintiffs.

The TAC alleges that Hyrum, as a leader of the Order and principal of Ensign, occupied a position of authority and therefore benefited from the Order's operations generally. This is insufficient. Section 1595 requires that the defendant knowingly benefited from participation in a venture that the defendant knew or should have known was engaged in a violation. General status benefits shared by all leaders — prestige, authority, or indirect financial benefits from the Order's overall success — do not satisfy the "knowingly benefited from participation in a venture" element when the venture's alleged violative conduct (forced labor of these specific minors at Ensign) is not plausibly connected to Hyrum's knowledge or specific benefit. The TAC must allege facts showing that Hyrum knowingly benefited from participation in the specific venture while knowing or having reason to know that the venture was engaged in conduct violating §§ 1589 or 1590. Allegations that Hyrum held a leadership position, participated generally in the Order, or benefited from the existence of Order-affiliated businesses do not establish knowledge of, participation in, or benefit from the specific alleged forced labor of Amanda, Jenny, or Priscilla.

17

In the hotel cases that have become common under § 1595 (e.g., *A.D. v. Wyndham Hotels & Resorts, Inc.*, 2020 U.S. Dist. LEXIS 250759 (E.D. Va. July 22, 2020); *E.B. v. Howard Johnson by Wyndham Newark Airport*, 2023 U.S. Dist. LEXIS 231401 (D.N.J. Dec. 29, 2023)), courts have required plaintiffs to allege specific facts showing that hotel operators or franchisors knew or should have known of sex trafficking occurring on their properties — often through patterns such as cash payments for rooms, multiple unrelated male visitors, signs of physical abuse, or repeated complaints. Constructive knowledge is inferred from red flags that would put a reasonable operator on notice.

Here, the TAC alleges no such red flags specific to Ensign Learning Center's teacher's assistant program or to these three Plaintiffs' work there that would have put Hyrum Dalton Kingston on notice that the "venture" was engaged in forced labor or trafficking violations. The TAC alleges general Order practices of child labor and diversion of earnings, but these are collective allegations that this Court has already rejected as insufficient to tie liability to any particular defendant. There is no allegation that Hyrum personally observed, participated in, or was willfully blind to any specific coercive conduct directed at Amanda, Jenny, or Priscilla at Ensign.

Moreover, the "benefit" element requires more than general leadership status. In *Ricchio*, the motel owners benefited by renting rooms to the trafficker — a direct, transaction-specific benefit from the venture that facilitated the trafficking. Here, the TAC does not allege that Hyrum personally received any specific financial or other benefit from Amanda's, Jenny's, or Priscilla's specific unpaid or underpaid labor at Ensign, as opposed to general benefits shared by all Order leaders from all Order operations. The systemic diversion of earnings to Order Bank accounts is attributed to broader Order practices, not to any action by Hyrum at Ensign.

**C. Absence of Causal Nexus Between Hyrum's Alleged Conduct and the Plaintiffs' Labor**

Even if the TAC plausibly alleged that Hyrum engaged in some coercive conduct (which it does not for Jenny or Priscilla, and does not in a labor-extraction context for Amanda), it fails to allege that this conduct was the moving force or causal nexus for these Plaintiffs' decision to work or continue working at Ensign. Amanda was already working at Ensign when the DCFS episode occurred. The dress-code incident is alleged as a prior event that created generalized fear, not as a threat tied to labor performance. For Jenny and Priscilla, there is no alleged conduct by Hyrum at all beyond the supervisory title.

Section 1589 requires that the prohibited means be used to obtain the labor or services. A subsequent, unrelated effort to influence a DCFS interview about third-party sexual abuse does not retroactively make historical school work "forced labor." The TAC fails to plead any temporal, operational, or causal connection between Hyrum's alleged actions and the extraction of these Plaintiffs' labor at Ensign.

**D. Involuntary Servitude Claim Under § 1584 and the Thirteenth Amendment Also Fails**

Section 1584 prohibits holding a person in involuntary servitude. To the extent Plaintiffs purport to assert a direct, independent cause of action for damages under the Thirteenth Amendment itself, that claim fails as a matter of law. The Thirteenth Amendment does not create a private right of action for damages; it is enforced exclusively through statutes enacted by Congress, including the civil remedies in the TVPRA (18 U.S.C. §§ 1589, 1595). *See, e.g., United States v. Kozminski*, 487 U.S. 931, 944–48 (1988) (recognizing that the Amendment is not self-executing for

19

private damages actions). Because the TVPRA provides the exclusive statutory vehicle for these claims, any standalone Thirteenth Amendment damages claim in Count II must be dismissed with prejudice as to Hyrum Dalton Kingston.

## III. THE FLSA CLAIMS (COUNT III) FAIL BECAUSE HYRUM DALTON KINGSTON IS NOT AN "EMPLOYER" UNDER THE ECONOMIC REALITY TEST AND ARE INDEPENDENTLY TIME-BARRED

Only Jenny Kingston and (potentially) other Plaintiffs assert FLSA claims against Hyrum Dalton Kingston. Amanda Rae Grant does not.

### A. Hyrum Dalton Kingston Is Not an "Employer" Under the FLSA Economic Reality Test

The FLSA defines "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). Individual liability requires that the defendant exercise "significant control" over the employment relationship under the economic reality test. *Barlow v. C.R. England, Inc.*, 703 F.3d 497, 506 (10th Cir. 2012).

In *Barlow*, the Tenth Circuit identified four factors relevant to whether an individual is an employer: Power to hire and fire employees; Supervision and control of employee work schedules or conditions of employment; Determination of rate and method of payment; and Maintenance of employment records. *Id.* (citing *Baker v. Flint Eng'g & Constr. Co.*, 137 F.3d 1436, 1440 (10th Cir. 1998), and other authorities). No single factor is dispositive; the court looks to the totality of the circumstances to determine whether the individual "possessed operational control over significant aspects of the corporation's day to day functions, including compensation of employees." *Id.* at 506–07 (internal quotation marks and citation omitted).

20

The TAC contains no factual allegations demonstrating that Hyrum Dalton Kingston possessed any of these four factors with respect to Amanda, Jenny, Priscilla, or any other Plaintiff: There is no allegation of power to hire or fire. The TAC does not allege that Hyrum hired or fired any of these Plaintiffs, or that he had authority to do so. Work assignments at Ensign and other Order businesses are alleged to have been directed by "Order leadership" or higher-ranking individuals (e.g., Paul Elden Kingston, Sr.). There is no allegation of supervision and control of work schedules or conditions specific to Hyrum. While the TAC alleges that Jenny and Priscilla "reported to" or worked "under the supervision of" Hyrum (and others) at Ensign, this is a group allegation that includes multiple supervisors. There is no allegation that Hyrum personally set their schedules, directed their day-to-day tasks, evaluated their performance, or controlled the conditions of their employment at Ensign. For Amanda, the supervision allegation is even more attenuated (via Karen Bryant). There is no allegation that Hyrum determined rate or method of payment. The TAC alleges that these Plaintiffs never received paychecks and that their earnings were directed to Order Bank accounts subject to unauthorized withdrawals. These practices are attributed to systemic Order policies and the Order Bank — not to any decision or action by Hyrum Dalton Kingston at Ensign. There is no allegation that Hyrum set wages, decided whether to pay these Plaintiffs, or controlled the diversion of their earnings. There is no allegation that Hyrum maintained employment records. The TAC alleges that Order Businesses are obligated by law to maintain and produce pay records, but Plaintiffs have none because they never received paychecks. There is no allegation that Hyrum personally maintained or controlled employment records for these Plaintiffs.

Being a school principal or occupying a position in a supervisory hierarchy is legally insufficient under *Barlow* and the economic reality test. Courts have routinely held that mid-level

21

supervisors, managers, or principals who lack operational control over hiring, firing, pay, and records are not "employers" for FLSA individual liability purposes. The TAC's allegations against Hyrum are even weaker than those in cases where courts have dismissed FLSA claims against individual defendants who had more direct involvement in day-to-day operations.

The non-payment and diversion of earnings to Order Bank accounts is alleged to be a systemic Order practice directed by higher leadership. Hyrum's role as principal or supervisor at Ensign does not transform him into an FLSA "employer" for these claims.

### B. FLSA Claims Are Independently Time-Barred

FLSA claims are subject to a two-year statute of limitations, extended to three years for willful violations. 29 U.S.C. § 255(a). Willfulness requires that the employer knew or showed reckless disregard for whether its conduct was prohibited by the FLSA. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).

Amanda Rae Grant left the Order circa 2012–2013, after events occurring when she was approximately 15–17 years old (born August 31, 1995). Her work at Ensign occurred around age 15 (approximately 2010–2011). Any FLSA claim arising from this alleged employment appears facially untimely because the alleged work occurred more than a decade before this action was filed. The TAC does not allege facts establishing tolling, delayed accrual, or any basis for extending the applicable limitations period as to Hyrum specifically.

The TAC does not plausibly allege that Hyrum Dalton Kingston personally acted willfully with respect to these Plaintiffs' compensation (or lack thereof) at Ensign. There is no allegation that Hyrum knew these Plaintiffs were not being paid, or recklessly disregarded FLSA requirements. The systemic non-payment practices are attributed to the Order's broader leadership and Order Bank

policies. Even if willfulness could be inferred against some defendants (which is not conceded), the TAC contains no facts supporting a plausible inference of willfulness by Hyrum specifically.

For Jenny Kingston and any other Plaintiff asserting FLSA claims against Hyrum, the TAC fails to allege facts showing that Hyrum personally exercised the control necessary to be an "employer" or that he acted willfully. To the extent Plaintiffs' FLSA claims accrued more than two years (or three years for willful violations) before filing, they are time-barred. The TAC does not allege facts establishing a timely FLSA claim against Hyrum specifically.

## IV. ANY CIVIL CONSPIRACY CLAIM (COUNT V) FAILS FOR LACK OF SPECIFIC AGREEMENT, MEETING OF THE MINDS, OR OVERT ACT TIED TO THESE PARTICULAR PLAINTIFFS' ALLEGED INJURIES

To the extent the TAC reasserts a civil conspiracy claim against Hyrum Dalton Kingston (as it did against him in the SAC for certain Plaintiffs), it fails as a matter of law.

Under Utah law and federal common law, civil conspiracy requires: (1) a combination of two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages proximately caused by the conspiracy. *See, e.g., Israel Pagan Estate v. Cannon*, 746 P.2d 785, 790 (Utah Ct. App. 1987).

The TAC contains no facts showing that Hyrum Dalton Kingston entered into a specific agreement with any co-defendant to traffic or subject Amanda Rae Grant, Jenny Kingston, or Priscilla Tucker to forced labor or involuntary servitude. There is no allegation of a "meeting of the minds" between Hyrum and any other defendant regarding the alleged trafficking or forced labor of these particular Plaintiffs. The isolated dress-code discipline incident and the DCFS coaching episode (both involving only Amanda) do not constitute an overt act in furtherance of a conspiracy

23

to traffic or subject these Plaintiffs to forced labor. Hyrum's leadership position and supervisory role at Ensign do not supply the missing agreement or overt act.

Any previously voluntarily dismissed conspiracy claims cannot be revived. To the extent the TAC attempts to plead conspiracy based on collective allegations about Order leadership or the "Law of One Above Another," those allegations are insufficient under this Court's March 31, 2026 Order and *Iqbal*. Count V must be dismissed as to Hyrum Dalton Kingston.

Even assuming arguendo such facts existed that could establish conspiracy, the intra-corporate conspiracy doctrine bars the claim: under both federal common law and Utah law, a single corporate or organizational entity cannot conspire with itself or its own agents acting within the scope of their employment. *See Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 769 (1984); *Israel Pagan Estate v. Cannon*, 746 P.2d 785, 790 (Utah Ct. App. 1987); *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000) (en banc). The TAC pleads only coordinated intra-entity action within the single organizational enterprise of Ensign Learning Center and the Order, which cannot supply the distinct actors or meeting of the minds required for conspiracy as a matter of law.

**V. THE TAC'S CONTINUED RELIANCE ON COLLECTIVE ALLEGATIONS VIOLATES THIS COURT'S MARCH 31, 2026 ORDER AND IQBAL/TWOMBLY — ALLOWING THESE CLAIMS WOULD EVISCERATE THE PLAUSIBILITY STANDARD AND ENCOURAGE VICARIOUS LIABILITY BY TITLE ALONE**

This Court's March 31, 2026 Order (ECF No. 411) explicitly cautioned that "collective allegations will not be tolerated" and required claims to be supported by specific cross-references to paragraphs containing well-pleaded facts against particular defendants if the defendant was not

specifically named in the cause of action. *Id.* at 8–9. The TAC has not complied with this directive as to Hyrum Dalton Kingston.

Instead, the TAC: Alleges Hyrum's leadership title and principal role at Ensign; Adds one isolated dress-code discipline incident and one DCFS coaching episode (both involving only Amanda and both untethered to labor extraction); Alleges that Jenny and Priscilla "reported to" or worked "under" Hyrum for short periods (group allegations including multiple other supervisors); And then relies on hundreds of paragraphs of collective allegations about Order hierarchy, child labor practices, the "Law of One Above Another," punishments for disobedience, and diversion of earnings to Order Bank accounts to supply the missing elements of coercion, knowledge, benefit, control, and agreement.

This is precisely the type of collective pleading this Court rejected in its March 31, 2026 Order. Allowing these claims to proceed against Hyrum Dalton Kingston despite the absence of defendant-specific factual allegations would be inconsistent with the plausibility standard established in Iqbal and Twombly and with this Court's prior Order. It would effectively impose vicarious or respondeat superior liability without meeting the standards for those doctrines or the specific statutory elements of the TVPRA, FLSA, or conspiracy claims.

This Court should not permit the TAC to circumvent its prior order and the governing pleading standards. All claims against Hyrum Dalton Kingston should be dismissed with prejudice.

## VI. FURTHER AMENDMENT WOULD BE FUTILE — THESE ARE THE FACTS AFTER FULL OPPORTUNITY TO AMEND, AND THEY ARE LEGALLY INSUFFICIENT AS A MATTER OF LAW

Plaintiffs have now had multiple opportunities to plead their case, including the TAC filed after this Court's March 31, 2026 Order and its explicit warnings against collective allegations. Even after full opportunity to amend, the allegations against Hyrum Dalton Kingston remain extraordinarily thin and legally insufficient to state any plausible claim under the TVPRA, FLSA, or conspiracy theories. Further amendment would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Jefferson County Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999). After three opportunities to amend—and after this Court expressly identified the pleading deficiencies—Plaintiffs still have not alleged facts plausibly establishing Hyrum's liability under any cause of action. The TAC represents their best effort, and there is no reason to believe a fourth or fifth amended complaint would cure these fundamental deficiencies. Dismissal with prejudice is therefore appropriate.

### CONCLUSION

For the foregoing reasons, Defendant Hyrum Dalton Kingston respectfully requests that this Court enter an order: (1) Dismissing with prejudice all claims asserted against him in the Third Amended Complaint (labor trafficking, involuntary servitude, FLSA violations, civil conspiracy, and any other claims); (2) Awarding him his costs and reasonable attorneys' fees incurred in defending this action to the extent permitted by law; and (3) Granting such other and further relief as the Court deems just and proper.

DATED this 3rd day of July, 2026.

/s/ Ryan C. Kingston
*Ryan C. Kingston*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 3rd, 2026, I caused a true and correct copy of the foregoing Motion to Dismiss to be served via the Court's CM/ECF system on all counsel of record.

**/s/ Ryan C. Kingston**